## CASTLEBERRY *vs.* WEAVER.

1. One who buys land that is, at the time, under levy, as the property of a third person, whether he in fact had notice of such judgment, execution and levy at the time or not, cannot bo protected against the lien of such judgment and execution as an innocent purchaser.

2. If one is indebted, as guardian, to another, who was his ward, and turns over land or other property, that is at the time subject to the lien of judgments in favor of third persons, in payment of what he owes his ward, as guardian, and afterwards dies, the land still continues subject to the lien, and is not protected from levy and sale under the Statute of 18th February, 1799, "for the protection and security of orphans and their estates."

Claim, from Clay Superior Court. Tried before Judge ALLEN, at March Term, 1860.

This was a claim issue, in which William Castleberry was plaintiff in *fi. fa.*, Thomas J. Watts, defendant, and Shelton R. Weaver, claimant. The lots levied on were 259, 260, and 262, in the 7th districts of formerly Randolph county. The judgment on which the *fi. fa.* was founded was obtained in

April, 1844. A levy had been made in October, 1844, dismissed in May, 1849, renewed in 1849 and again in 1856.

It was put in proof by the plaintiff, on the trial, that Watts, the defendant in *fi. fa.*, was in possession of the land known as Weaver's Mills, in 1832 or 1833. Benjamin F. Watts and one Garner lived on the land, but Thomas J. Watts controlled and exercised acts of ownership over it with Benjamin F. Watts, and both claimed it up to 1839 or 1840. Then Benjamin F. moved off to Baker county and left Thomas J. in full control, who claimed it as his own. He went out of possession in 1845 or 1846, when he moved to Florida. Garner and Weaver went into possession in 1846, after Watts left, and remained in possession three or four years, then Weaver went in possession. He was in possession in 1856. Weaver, the claimant, took possession in 1853.

On the part of claimant, there were various deeds put in evidence, showing title from the State, through various parties, for the three lots down to B. F. Watts, who had deeds for each for some time previous to 1855, and who conveyed his title to each, in 1846, to William L. Morgan and Thomas W. Garner. In 1850, Garner, as administrator of William L. Morgan, deceased, sold and conveyed to B. H. Kizer one-fifth part of these lots, and Kizer sold the same interest to Garner the same year. In 1852, Garner conveyed the whole to Weaver, the claimant. The interest of James W. Morgan and John C. Oats (what interest not stated) therein had been by them conveyed to Garner in 1848. Also, the indefinite interest of Elizabeth Watts, conveyed from Chambers to her in 1845, was conveyed by deed to claimant, Weaver. It was in proof that Thomas J. Watts said, in 1842, that the lots belonged to Benjamin L. Watts.

In rebuttal by plaintiff, it was proven that Thomas J. Watts became the guardian of Thomas W. Garner and his sister, the wife of William L. Morgan, and that B. F. Watts stood his security on the guardian's bond; that Thomas J. Watts said that Benjamin F. had used the money of his ward, and that Benjamin F. must pay the money due them. This was in 1845.

A witness stated that he persuaded Garner to take this property in dispute in payment of the debt Thomas J. owed him, as guardian, and did so because both the Watts were in

bad pecuniary condition ; that Garner had better take. that than nothing; Garner complained of the price, but a few days afterwards, B. F. Watts came down and Garner said he had bought the property and Thoms J. was largely in-' debted to him, and took property in part payment.

It was further proven that Thomas J. Watts went into possession of the mill property in 1833 ; that one Cannon was in possession in 1832 ; in 1833, Thomas J. exchanged his interest in a steamboat with Cannon for the latter's interest in the mill property, and then owned the same with B. F. Watts ; B. F. Watts afterwards exchanged his interest in the mill property with Thomas J. Watts for the latter's interest in the Baker county mills, and that Thomas J. then controlled the mill property in dispute ; this was in 1839 or 1840 ; Thomas J, Watts died in 1845 or 1846.

The evidence having closed, counsel for plaintiff requested the Court to charge the jury—

1st. That if Thomas W. Garner had notice that Benjamin F. Watts had to obtain the consent of Thomas J. Watts before he could make a title to the property in controversy to Garner, it was sufficient to put him on his guard, and that he is not an innocent purchaser without notice.

2d. That if the claimant, Weaver, had notice of the pendency of this levy and claim to the property when he purchased it, that was sufficient to put him on his guard, and that he is not an innocent purchaser without notice.

3d. That the defendant in *fi. fa.* could not, while in life, turn over his ward's property in satisfaction of the obligation under the guardian's bond to the exclusion of other judgment liens on the property that had attached before the date of the transfer.

The Court refused to charge these requests, but did charge, that if the jury believe that Thomas J. Watts was indebted to Garner, as his guardian, that it was a debt of prior dignity to any after debt; and if the jury believe that he turned the property over to him in payment of said obligation and died soon after that, plaintiff cannot recover ; that he could do himself what equity would compel him to do, and the purchaser will be protected.

The issue having been found in favor of the claimant, counsel for plaintiff moved for a new trial on a great num-

Castleberry *vs.* Weaver.

ber of grounds, amongst which were the said charge and refusals to charge by the Court.

The Court overruled the motion, and plaintiff's counsel excepted.

DOUGLASS & DOUGLASS, for plaintiff in error.

LAW & SIMS, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. We do not take this to be one of the cases where a purchase, without notice of the outstanding lien, will protect the purchaser against such lien, for the reason that at the time of the sale from Benjamin F. Watts to William L. Morgan and Thomas W. Garner, of the several lots in controversy—say for one of the lots on the 8th day of February, 1846, and for the two others on 28th February, 1846—the lands were actually under levy, by virtue of this execution, and so have continued constantly from then down to the trial, except for a few months during the year 1849; and purchasers are bound to take notice of such outstanding lien and levy, and should they in fact buy without notice, the want of such notice will not protect the lands from the judgment and execution. So we think the Court erred in not giving the charge requested by counsel for the plaintiff; that is, if Garner and Weaver, the purchasers from Benjamin F. Watts, had notice of Thomas J. Watts' interest or claim in the land, or of the pendency of the levy and claim, the present claimant is not an innocent purchaser without notice.

2. The evidence, as well as the charge of the Court, disclose the fact that the claimant relied for protection of his title against the execution, on the fact, that at the time of the purchase and title from Benjamin F. Watts to William L. Morgan and Thomas W. Garner, Thomas J. Watts was indebted to Morgan and Garner, as their guardian, or as the guardian for Garner and Morgan's wife, and that they took this land in settlement or payment of what Thomas J. Watts was due to them, as guardian, and that as Thomas J. Watts has since died, the superior lien created by the Statute of 18th February, 1799, *Cobb*, 288, in their favor, in which the executor or administrator of a deceased guardian, etc., is

compelled to pay out of the estate of such deceased guardian or so much as shall appear to be due to the estate of such minor, etc., before any other debt, would perfect their title so acquired, and protect it from the judgment. On this subject, the Court charged the jury, that if Thomas J. Watts, as guardian, was indebted to Garner, that it was a debt of prior dignity to any other debt, and if the jury believe that he turned over the property to him in payment of said obligation, and died soon after that, plaintiff cannot recover; that he could do himself, what equity would compel him to do, and the purchaser will be protected. In this there was error.

So long as Thomas J. Watts, the guardian, was in life, there was no priority as to debts due by him, as guardian, over judgment liens or any other debts, and he could not be forced by equity, nor could he voluntarily or otherwise make a disposition of any of his property that would defeat or impair the lien of this judgment, nor does his death give any additional validity to the transaction that could possibly protect this property from the lien of this judgment. The effect of the statute is to give priority of payment by the administrator or executor of the deceased guardian out of the estate of such deceased guardian for such debt as the guardian shall die chargeable to with his ward. The statute goes no farther, and the Court cannot extend it any farther. It certainly could never be construed to vest a title to any of the guardian's property in the ward for the payment of the debt, and that is the effect of the charge. Had Watts died chargeable to Garner and Morgan, or either, as guardian for them, and this property had been administered, the administrator would have been compelled to pay such debt therefrom in preference to this judgment. The question before the Court, and in which the parties were at issue, was, whether the property was subject to the plaintiff's lien? And with that the equities that might exist between the estate of Watts and his wards had nothing to do, and the Court should have repelled all evidence relating thereto from the jury, as being irrelevant to the issue.

The Court is clear, that if the witnesses have testified truly—and they stand before us unimpeached, and are to be believed—the property is subject to this execution, and so the judgment ought to be.

There are a number of questions made in the record which we have not noticed, arising upon objections to the admissibility of the paper title from the State of Georgia down to B. F. Watts, because both parties claim under the same title down to that point, and it is to the interest of each that that much of the title should be sustained; hence, an objection to it from either party is irregular, and so of the paper title from B. F. Watts down to claimant, it is indifferent to the claimant whether that title is regular or not, as that in no wise affects his lien on the property.

Judgment reversed.